IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

HADI HAJIMOHAMMADIDIBAZAR,

    Petitioner

v.                                      Case No. 1:26-cv-00001-KWR-LF

MELISSA ORTIZ, Acting Warden, Torrance
County Detention Facility; JOEL GARCIA, Field
Office Director, El Paso Field Office, United
States Immigration and Customs Enforcement;
TODD M. LYONS, Acting Director, United
States Immigration and Customs Enforcement;
KRISTI NOEM, Secretary of Homeland Security;
PAMELA JO BONDI, United States Attorney
General, in their official capacities,

    Respondents.

## PROPOSED FNDINGS & RECOMMENDED DISPOSITION

THIS MATTER is before the Court on petitioner Hadi Hajimohammadidibazar's Verified Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1). United States District Judge Kea Riggs referred this case to me under 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to "submit an analysis and recommended disposition to the District Judge assigned to the case." Doc. 13 at 1. Having reviewed the briefings and the law, I recommend that the Court grant the petition.

## BACKGROUND

### I.    Factual Background

Petitioner is a citizen and national of Iran, who fled to the United States to seek protection after participating in protests against the Iranian government and converting to Christianity. Doc. 1 ¶ 38. Petitioner entered the United States in December of 2023. *Id.* ¶ 39.

United States Customs and Border Protection ("USCBP") encountered Petitioner at or near Jacumba, California on December 22, 2023, and Petitioner was apprehended and held in custody for two days before being released on his own recognizance. *Id.* ¶ 39; Doc. 15-1 ¶¶ 6–7. Petitioner was placed in removal proceedings, and after his release, he moved to Irvine, California. Doc. 1 ¶¶ 39–40.

Petitioner attended all of his immigration court hearings, appeared for his scheduled check-in with Immigration and Customs Enforcement ("ICE") on December 26, 2024, and received authorization to work. *Id.* ¶ 40. On July 13, 2024, an immigration judge ("IJ") ordered that Petitioner be removed to Iran and denied his application for asylum.[1] *Id.* ¶ 41; Doc. 15-2 at 10. In the same order, however, the IJ granted Petitioner withholding of removal to Iran because Petitioner established that he was more likely than not to be persecuted if he were returned to Iran. Doc. 1 ¶ 41; Doc. 15-2 at 10. Both the order of removal and the grant of withholding of removal became administratively final on August 15, 2024. Doc. 1 ¶ 41.

On June 25, 2025, Petitioner reported to an ICE office in Santa Ana, California, for a scheduled check-in, where he was detained by immigration officials. *Id.* ¶¶ 52–53; Doc. 15-1 ¶ 10. Petitioner alleges that "the arresting officer acknowledged that Petitioner had a grant of withholding of removal but said that he was to remain in custody while his case was reviewed." Doc. 1 ¶ 53. After his arrest, Petitioner was transferred to the Torrance County Detention Facility in Estancia, New Mexico, where he currently is detained. *Id.* ¶ 54. Petitioner alleges

---

[1] There is some discrepancy in the record as to the date of the IJ's order. The petition states that Petitioner was ordered removed and granted withholding of removal on July 15, 2024, Doc. 1 ¶¶ 2, 14, 41, and images of the Executive Office of Immigration Review's automated case information website state that Petitioner was ordered removed on July 15, 2024, Doc. 15-3 at 1–2. The IJ's order, however, is dated July 13, 2024; the order then was served on the parties on July 15, 2024. Doc. 15-2 at 10–11. For clarity, I will rely on the dates in the IJ's order: the order was issued on July 13, 2024, and served on the parties on July 15, 2024. *Id.*

that he frequently sends messages to his deportation officer about the status of his case and reason for detention, but the only response he has received is that "his case is being reviewed for third-country deportation." *Id.* ¶ 55.

Sometime in early December 2025, Petitioner alleges that a deportation officer had him sign several documents. *Id.* ¶ 56. Petitioner believed they were related to a custody review, but he was only able to skim the documents before signing them. *Id.* Petitioner alleges that the deportation officer told him "that the documents had nothing to do with deportation, that he would review Petitioner's case, and that Petitioner may be released." *Id.* Petitioner states he was not given a copy of the documents and has not been informed of the results of any custody review. *Id.*

Petitioner has been held in custody for over eight months. *See id.* ¶¶ 54, 57. Respondents state, upon information and belief, that the Department of Homeland Security ("DHS") is working with the Department of State to remove Petitioner to a country other than Iran. Doc. 15 at 2. Respondents have not identified a third country of removal, and neither Petitioner nor his parents have citizenship from any country other than Iran. Doc. 1 ¶ 59; *see* Doc. 15-2 ¶ 11 (stating that the government "was actively working with Department of State and DHS on avenues to remove [Petitioner] to a third country" but not identifying a third country).

## II.      Procedural History

Petitioner filed his petition for a writ of habeas corpus in this Court on January 2, 2026. *See* Doc. 1. On February 6, 2026, the Court issued an order to answer directing Respondents to answer the petition within fourteen days and allowing Petitioner to file a reply within fourteen days. Doc. 12 at 1–2. The Court referred this case to me on February 9, 2026, to recommend a

disposition of the matter.  Doc. 13 at 1.  Respondents timely filed their response to the petition on February 19, 2026.[2]  *See* Doc. 15.  Petitioner filed his Reply on March 6, 2026.  *See* Doc. 16.

## ANALYSIS

Petitioner argues that his continued detention violates (1) the Administrative Procedure Act, the Immigration and Nationality Act, and the *Accardi* Doctrine, Doc. 1 ¶¶ 60–68; (2) his Fifth Amendment rights to substantive due process, *id.* ¶¶ 69–76; and (3) his Fifth Amendment rights to procedural due process, *id.* ¶¶ 77–83.  Petitioner asks the Court to order Respondents to (1) release Petitioner from custody without any conditions, or, alternatively, release Petitioner on an Order of Supervision that includes no physical restraints; (2) immediately return Petitioner's property to him upon release; and (3) refrain from re-detaining Petitioner without following the requirements of 8 C.F.R. § 241.4(*l*) and without establishing, by clear and convincing evidence, that Petitioner is a danger to the community or that custody is necessary to enforce removal.  *Id.* at 19–20.  Respondents ask the Court to deny or dismiss the petition, arguing that Petitioner is lawfully detained pursuant to his pending removal to a country other than Iran.  Doc. 15 at 1.

I.      **Petitioner should not be required to exhaust administrative remedies before seeking habeas relief.**

Respondents argue that Petitioner should not be granted habeas relief without first being required to either exhaust his administrative remedies or demonstrate the futility of those remedies.  Doc. 15 at 8.  Petitioner replies that administrative exhaustion is not required, and that even if it were, he repeatedly has requested a custody review.  Doc. 16 at 4–5.  I recommend that

---

[2] The warden of the Torrance County Detention Facility, Melissa Ortiz, is named as a respondent in this matter but has not entered an appearance nor filed an individual response.  However, counsel for the federal respondents states that, while she does not represent Warden Ortiz, "all arguments made on behalf of the [federal] respondents apply equally to the warden."  Doc. 14 at 1 n.1.

the Court not require Petitioner to exhaust his administrative remedies before seeking relief through habeas.

Habeas petitioners ordinarily are required to exhaust administrative remedies before seeking a writ under § 2241, but exhaustion is not a statutory requirement. *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *Soberanes v. Comfort*, 388 F.3d 1305, 1310–11 (10th Cir. 2004). Rather, "[c]hallenges to immigration detention are properly brought directly through habeas," and administrative exhaustion deficiencies "do not affect habeas jurisdiction over such claims." *Soberanes*, 388 F.3d at 1310.

Where exhaustion is not statutorily required, "sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992), *superseded by statute on other grounds as stated in Woodford v. Ngo*, 548 U.S. 81, 84–85 (2006). Prudential factors favor exhaustion when "(1) the action under review involves exercise of the agency's discretionary power, and (2) the agency procedure at issue allows for "the agency to apply its special expertise." *Lorenzo v. Bondi*, No. 2:25-cv-00923 KWR-GJF, 2026 WL 84521, at *3 (D.N.M. Jan. 12, 2026) (quoting *McCarthy*, 503 U.S. at 145). However, an individual's interests weigh heavily against requiring exhaustion "(1) when the administrative remedy may occasion undue prejudice to subsequent assertion of a court action; (2) when there is doubt that the agency is empowered to grant effective relief; and (3) when an administrative body is shown to be biased" or to have predetermined the issue. *Id.* (internal quotations omitted).

This Court previously has found that these prudential factors are not applicable to adjudicating *Zadvydas* claims like Petitioner's. *See id.* As to the factors that favor exhaustion, the Court found that determining the likelihood of future removal does not call for specific agency expertise, and that due process concerns restrict an agency's discretion to detain and

remove a noncitizen when the noncitizen is detained beyond the presumptively reasonable period.  *Id.*  The Court further found the factors weighing against exhaustion inapplicable where the petitioner did not argue that his administrative remedies would impose undue prejudice on a later court action or that the agency had shown bias or had predetermined the outcome.  *Id.* at *3–*4.  Here, Petitioner likewise makes neither argument, nor has he argued that the agency does not have the power to grant effective relief.  *See* Doc. 1; Doc. 16 at 6–7.

In *Lorenzo,* this Court found that a petitioner's interest in prompt access to a federal judicial forum outweighs the institutional interests favoring exhaustion.  2026 WL 84521, at *4.  Like the petitioner in *Lorenzo*, Petitioner "has been detained for over six months, and the presumptively reasonable period of detainment has expired."  *Id.* (citations omitted).  The government argues that not requiring exhaustion "would encourage the deliberate bypass of the administrative scheme," Doc. 15 at 8, but like in *Lorenzo*, the government's "analysis concerning its administrative interests stops there," 2026 WL 84521, at *4.  Accordingly, the Court should not "find that the existence of an unspecified impact on an administrative scheme outweighs the clear impact upon Petitioner's due process rights warranting prompt access to a federal judicial forum."  *Id.*

In sum, administrative exhaustion is prudential, *Lorenzo*, 2026 WL 84521, at *3, and challenges to immigration detention "are properly brought directly through habeas," *Soberanes*, 388 F.3d at 1310.  Because Petitioner's interest in prompt access to a federal judicial forum outweighs the institutional interests favoring administrative exhaustion, I recommend that the Court decline to require Petitioner to exhaust his administrative remedies.

II.   **The Court should grant Petitioner relief on his *Zadvydas* claim.**

Section 1231 of title 8, United States Code requires the Attorney General to detain noncitizens for ninety days from the date their order of removal order becomes administratively final.[3]  8 U.S.C. § 1231(a)(1)(A)–(B).  Once this ninety-day removal period expires, the government may continue to detain a noncitizen, but not indefinitely.  *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).  Continued detainment for six months is presumed reasonable.  *Id.* at 701.  After continued detainment for six months, a noncitizen may "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and the government "must respond with evidence sufficient to rebut that showing."  *Id.*  "Courts in this district have repeatedly held that detention exceeding six months, combined with failed removal efforts and the absence of any accepting country, constitutes 'good reason' to believe removal is not reasonably foreseeable."  *Horbenko v. Castro*, No. 2:25-cv-00764 WJ-DLM, 2026 WL 381867, at *4–*5 (D.N.M. Feb. 11, 2026) (collecting cases).

This Court's recent decision in *Lorenzo* is particularly applicable.  In *Lorenzo*, the petitioner was first detained after entering the United States without proper documentation.  2026 WL 84521, at *1.  The petitioner, a citizen of Guatemala, was placed in removal proceedings but was granted withholding of removal to Guatemala and then was released on an order of supervision.  *Id.*  More than a decade later, ICE again detained the petitioner and began pursuing third country removal to Mexico, but the government "provided no communications indicating that Mexico will accept, or is considering accepting," him.  *Id.*  The only evidence the

---

[3] The Supreme Court has clarified that a removal order becomes administratively final for purposes of detention "once the [Board of Immigration Appeals (BIA)] has reviewed the order (or the time for seeking the BIA's review has expired)."  *Johnson v. Guzman Chavez*, 594 U.S. 523, 534–35 (2021).  In this case, Petitioner's order of removal became administratively final on August 15, 2024.  Doc. 1 ¶ 41.

government produced to support that the petitioner's removal to Mexico was foreseeable was a "months-old email request, without any response indicating an acceptance." *Id.* at *5.  Finding that the petitioner had demonstrated good reason to believe there was no significant likelihood of removal in the reasonably foreseeable future, and that the government had not produced evidence sufficient to rebut that showing, the Court granted the petitioner relief on his *Zadvydas* claim.  *Id.* at *5–*6.

Here, Petitioner has remained detained for over eight months—well beyond the presumptively reasonable six-month period—after his order of removal became administratively final.  Doc. 16 at 8; *see Zadvydas*, 533 U.S. at 701 (noting that "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink").  The IJ ordered Petitioner's removal to Iran, but Petitioner's removal to Iran is prohibited by an order withholding removal to Iran.  Doc. 15-2 at 10.  Like in *Lorenzo*, the government contends that it is seeking Petitioner's removal to a third country.  *Compare* Doc. 15 at 2, *with* 2026 WL 84521, at *1.  But the government here does not identify a third country, let alone describe in further detail its efforts to effectuate Petitioner's removal to any third country. The government only vaguely asserts that "DHS is actively working to arrange removal to a third country."  Doc. 15 at 1; *see* Doc. 15-1 ¶ 11.  No further documentation is provided to substantiate these efforts, not even a months-old email request to a potential third country.  *Cf. Lorenzo*, 2026 WL 84521, at *5.

I therefore recommend that the Court find that Petitioner has provided good reason to believe that there is no significant likelihood of his removal from the United States in the reasonably foreseeable future, and that the government has failed to respond with evidence sufficient to rebut Petitioner's showing.  *See Zadvydas*, 533 U.S. at 687; *Lorenzo*, 2026 WL

84521, at *5–*6.  Accordingly, I recommend that the Court grant Petitioner relief on his *Zadvydas* claim.

### III.    The Court may grant the relief requested solely on Petitioner's *Zadvydas* claim.

In addition to his *Zadvydas* claim, Petitioner asserts several alternative claims for relief. *See* Doc. 1 ¶¶ 60–82.  Should the Court grant Petitioner relief on his *Zadvydas* claim, "granting further relief under Petitioner's remaining claims would be cumulative."  *Lorenzo*, 2026 WL 84521, at *6; *see also Intriago-Sedgwick v. Noem*, No. 1:25-cv-01065-MIS-LF, 2025 WL 3688155, at *8 (D.N.M. Dec. 19, 2025) (collecting cases), *report and recommendation adopted*, No. 1:25-cv-01065-MIS-LF, Doc. 27 (D.N.M. Jan. 6, 2026).  Accordingly, I recommend that the Court decline to address Petitioner's remaining claims.

### IV.    The Court should order Respondents to immediately release Petitioner, return any personal property that was confiscated, and follow agency regulations before re-detaining Petitioner.

Should the Court grant Petitioner's habeas petition, Petitioner requests that the Court (1) order his release "without any conditions or, alternatively, on an Order of Supervision that includes no physical restraints, such as an ankle monitor or GPS tracking watch;" (2) order Respondents to immediately return his personal property to him upon his release; (3) prohibit Respondents from re-detaining him without "written notice of the reasons for his re-detention and the formal processes required under 8 C.F.R. § 241.4(*l*)," and (4) order that Respondents "bear the burden of establishing, by clear and convincing evidence, that Petitioner is a particular danger to the community or that custody is appropriate to enforce an existing removal order to a named third country."  Doc. 1 at 20.

The typical remedy for a due process violation under *Zadvydas* is the petitioner's release under the conditions of supervision, if any, that were in place at the time of the petitioner's

detention.  *Polanco Alvarado v. Warden, Torrance Cnty. Det. Facility*, No. 1:26-cv-00227-KG-LF, 2026 WL 458448, at *1 (D.N.M. Feb. 18, 2026); *see also Lorenzo*, 2026 WL 84521, at *7 (ordering that a petitioner be released "under the same terms of supervision, if any, that were in place at the time of his detention"); *Jimenez Chacon v. Lyons*, No. 2:25-cv-977-DHU-KBM, 2025 WL 3496702, at *10 (D.N.M. Dec. 4, 2025) (ordering a petitioner's release within twenty-four hours and restoring the terms of the petitioner's order of supervision).  I accordingly recommend that the Court order Respondents to release Petitioner no later than 5:00 p.m. the day following the date of the Court's order under the same terms of supervision that were in place at the time of his arrest on June 25, 2025.  *See Lorenzo*, 2026 WL 84521, at *7.  I further recommend that the Court order Respondents, upon Petitioner's release, to immediately return to Petitioner any property that was confiscated from him upon his detention.  *See J.B.C.O. v. Bondi*, Civil No. 26-424 (JRT/DJF), 2026 WL 638455, at *1 (D. Minn. Mar. 6, 2026) (noting that the government "retained possession of [numerous] Petitioners' personal property collected during their arrest and detention without any lawful basis to do so").

Finally, Petitioner requests that, should Respondents seek to re-detain Petitioner after his release from custody, Petitioner be provided with written notice and the formal processes of 8 C.F.R. § 241.4(*l*), and that Respondents bear the burden of establishing by clear and convincing evidence that Petitioner is a danger to the community or that custody is appropriate to enforce removal to a named third country.  Doc. 1 at 20.  Respondents did not address this request nor the regulatory requirements for re-detention.  *See* Doc. 15; *Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 622 n.5 (D.N.M. 2007) ("Failure to respond to an argument is generally deemed an acquiescence.").

Federal regulations set forth procedures for the re-detention of noncitizens subject to a final order of removal. *See* 8 C.F.R. § 241.4(*l*). Release may be revoked if the noncitizen violates the conditions of his or her release, and the noncitizen must "be notified of the reasons for revocation of his or her release or parole," as well as "afforded an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(*l*)(1). Release also may be revoked in the discretion of certain agency officials according to the provisions of 8 C.F.R. § 241.4(*l*)(2). *Jimenez Chacon*, 2025 WL 3496702, at *10. However, the regulations are silent as to whether a clear and convincing evidence standard applies to these re-detention procedures, and Petitioner provides no authority nor argument to support that the Court should impose that standard on Respondents.

I therefore recommend that the Court grant Petitioner's request to the extent that Petitioner asks the Court to order Respondents to follow the provisions of 8 C.F.R. § 241.4(*l*) before re-detaining Petitioner. Federal agencies must follow their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954).

**V.    The Court should prohibit Respondents from transferring Petitioner outside of the District of New Mexico without the Court's permission during the pendency of this action.**

Petitioner requests that the Court prohibit his transfer outside of the District of New Mexico without the Court's approval during the pendency of this action. Doc. 1 at 20. Respondents did not address this request in their Response and thus have acquiesced to it. *See Mulford*, 242 F.R.D. at 622 n.5. Further, courts in this district routinely have entered orders prohibiting petitioners' transfer out of the district during the pendency of their habeas litigation. *See, e.g.*, *Perez Parra v. Castro*, 765 F. Supp. 3d 1241, 1243–44 (D.N.M. 2025); *Melchor-Rios v. Ortiz*, No. 2:25-cv-01055-WJ-GJF, 2025 WL 3764775, at *3–*4 (D.N.M. Dec. 30, 2025); *see*

*also Castillo v. Ybarra*, No. 2:25-cv-01074-JB-JFR, 2026 WL 370497, at *44 (D.N.M. Feb. 10, 2026) (explaining that the All Writs Act grants district courts discretion to enjoin petitioners' unlawful removal from New Mexico during the pendency of their habeas action).  I therefore recommend that the Court prohibit Respondents from transferring Petitioner outside of the District of New Mexico without the Court's prior approval before his release from custody.

VI.     **Should the Court grant Petitioner relief, Petitioner may seek costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act.**

Petitioner asks the Court to award him costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act ("EAJA").  Doc. 1 at 20.  The Tenth Circuit has "read the EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention."  *Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025).

A fee award is required under the EAJA if "(1) plaintiff is a 'prevailing party'; (2) the position of the United States was not 'substantially justified'; and (3) there are no special circumstances that make an award of fees unjust."  *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting 28 U.S.C. § 2412(d)(1)(A)).  The EAJA requires a prevailing plaintiff to, "within thirty days of final judgment in the action, submit to the court an application for fees and other expenses" that includes an allegation "that the position of the United States was not substantially justified."  28 U.S.C. § 2412(d)(1)(B).  The Tenth Circuit has stated that "once an EAJA application is filed, the government is on notice . . . that it must justify both its position in any underlying administrative proceedings and its position in any subsequent district court litigation."  *Hackett*, 475 F.3d at 1170.

Should the Court grant Petitioner relief, Petitioner may file an EAJA application alleging that the government's position was not substantially justified.  *See id.*  Once that application is

12

filed, the government will have the opportunity to demonstrate that its position in both the underlying immigration case and in this Court was substantially justified. *See id.*

## CONCLUSION

For the foregoing reasons, I recommend that the Court grant Petitioner's Verified Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. 1). I recommend that the Court order that Petitioner be released no later than 5:00 p.m. the day following the date of the Court's order under the same terms of supervision that were in place at the time of his arrest on June 25, 2025. I further recommend that the Court order Respondents to immediately return Petitioner's personal property to him upon his release, and that the Court prohibit Respondents from transferring Petitioner outside of the District of New Mexico without the Court's approval before his release from custody. I also recommend that the Court prohibit Respondents from re-detaining Petitioner without following the formal processes of 8 C.F.R. § 241.4(*l*). Finally, I recommend that the Court order Respondents to file a status report within two business days of the Court's final order, certifying the time and date of Petitioner's release and that his personal property was returned to him.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). Written objections must be both timely and specific.** *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma,* **73 F.3d 1057, 1060 (10th Cir. 1996). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. Failure to file timely and specific objections will result in waiver of** *de novo* **review by a district or appellate court.** *Id.* **In other words, if no objections are filed, no appellate review will be allowed.**

LAURA FASHING
UNITED STATES MAGISTRATE JUDGE